STACKPOLE, Contestant and Appellant, *v.* HALLA-HAN, Contestee and Appellant.

[Submitted April 5, 1895. Decided April 15, 1895.]

STATUTES—*Adoption of foreign statute—Construction.*—As a general rule, by the adoption of a statute of a foreign country, the subject of which is new to this jurisdiction, the construction given to such statute by the courts of such foreign country is impliedly adopted, provided our own statute, as enacted, is silent as to the matter of construction. (*Lindley* v. *Davis*, 6 Mont. 453; *Territory* v. *Stears*, 2 Mont. 330; *First National Bank* v. *Bell etc. Min. Co.*, 8 Mont. 32, cited.

SAME—*Election laws—Construction.*—In the construction of election laws in a monarchy, the tendency is to limit and restrict the electoral franchise, but an opposite construction prevails in a republic. The whole tendency of American authority is towards liberality, to the end of sustaining the honest choice of electors, and an election law which we import from a monarchy should not, therefore, be subjected strictly to the rule that the importation of a statute imports also its construction. (*Price* v. *Lush,* 10 Mont. 61, modified and limited.)

SAME—*Same—"Australian Ballot Law"—Certificate of nomination.*—The provisions of sections 11 and 12 of the act of March 13, 1889, commonly called the "Australian Ballot Law," prescribing certain facts to be stated in a certificate of nomination, are not to be held to be mandatory in a case where the nomination has been duly made, a certificate filed, the name placed upon the ballot, the candidate voted for and elected by a plurality of all the legal votes cast, and where the effect of giving a mandatory construction to such provisions would be absolutely to disenfranchise a plurality of the voters of the district, although the honesty and fairness of the election have never been questioned. The act does not contemplate that an election shall be declared null by reason of nonprejudicial defects in the nominating certificate.

SAME—*Same—Sufficiency of certificate of nomination.*—In the case at bar W. was nominated by a political convention as a candidate for county treasurer, but his certificate of nomination was never filed, and he declined the nomination to the county committee of the party, and the said committee filled the vacancy by nominating H., and by filing a certificate of his nomination with the county clerk. In making and filing H.'s certificate, it did not technically comply with the provisions of sections 11 and 12 of the Australian Ballot Law (Act of March 13, 1889) in the following particulars: 1. W. did not decline his nomination in writing, notifying the officer, with whom the certificate of nomination is required to be filed, of his declination; 2. H.'s certificate did not show that he was nominated to fill a vacancy; 3. Nor set forth the cause of the vacancy; 4. Nor give the name of the person for whom H. was to be substituted; 5. Nor set forth that the committee had authority to fill the vacancy; 6. Nor set forth in direct language the business address of H; 7. Nor the business address of the chairman or secretary of the party committee making the nomination. *Held,* that no objections to such defects having been made until after an election, honestly and fairly conducted, the provisions of the statute as to certifying nominations should be construed as directory only, and the election should stand. (*First National Bank* v. *Neill,* 13 Mont. 382; *State ex rel. Pigott* v. *Benton,* 13 Mont. 306, cited.)

*Appeal from Third Judicial District, Deer Lodge County.*

ELECTION CONTEST.    Judgment was rendered by BRANTLEY, J., declaring the election void.    Reversed.

Statement of the case by the justice delivering the opinion.

This is an election contest, a statutory proceeding brought by E. S. Stackpole, asking that it be determined that he, and not D. F. Hallahan, was elected treasurer of Deer Lodge county, at the general election in November, 1894. It was determined by the district court that neither Stackpole or Hallahan was elected. Each party appeals.

For convenience in this statement, and in the opinion below, instead of speaking of the parties as appellant or respond-

ent, or contestant or contestee, we will simply use their personal names.   The case was tried to the court without a jury. Very ample findings of fact and conclusions of law were made by the court.   There is no question here as to the evidence, and our consideration of the case is simply whether the judgment upon the findings was correct.

The facts, as they appear in the findings, are as follows: At a convention of the Republican party of Deer Lodge county, held September 1, 1894, Stackpole was nominated for county treasurer.   A certificate of his nomination was duly filed with the county clerk and recorder.   No question is made as to his certificate.   The People's party of Deer Lodge county regularly held their convention on the 23d day of June, 1894. That convention duly nominated J. R. Whitmire for county treasurer.   No certificate of Whitmire's nomination was ever made by the officers of the convention, or filed with the county clerk.   That convention named a county central committee. It also passed a resolution authorizing that committee to fill any and all vacancies on the ticket of the People's party for county officers that then existed, or that might thereafter occur from any cause.   No certificate of Whitmire's nomination being filed, he declined to be a candidate for county treasurer, and notified the county committee of his declination of said nomination, and his refusal to be a candidate.   The county committee thereupon duly met on September 5, 1894.   The whole committee was present.   They met for the purpose of nominating a candidate of their party for the office of county treasurer, to fill the vacancy caused by the declination of Whitmire.   At that meeting D. F. Hallahan was nominated for the office of county treasurer, to fill the vacancy.   The chairman and secretary of the committee were duly instructed to file the proper certificate of his nomination.   They thereupon made and filed with the county recorder the following certificate:

"Deer Lodge, Mont., 10|3, '94.   At a regular meeting of the county central committee of the People's party of Deer Lodge Co., held at Anaconda, Mont., Sept. 5th, 1894, the fol-

lowing nominations were made for county treasurer: D. F. Hallahan, of Anaconda, Mont., wholesale liquor dealer. For county surveyor, J. P. Mitchell, of Deer Lodge, Mont., surveyor and assayer. Chairman, Dr. A. H. Mitchell, physician, Deer Lodge, Mont. E. B. Hosford, bookkeeper, Anaconda, Mont. E. B. Hosford, Sec. A. H. Mitchell, Chairman.''

This was filed on October 3d, within the time required by law. The clerk and recorder of Deer Lodge county made up the official ballot for use at said election from the nominations on file in his office. On that ballot he placed the names of E. S. Stackpole, Republican; D. F. Hallahan, Populist; and James B. McMaster, Democrat,—as candidates for county treasurer; also all the candidates of the different parties for various offices. He caused the same to be published daily for more than 10 consecutive days immediately prior to the said election, in the Anaconda Standard, a daily newspaper of general circulation, published in the county. Stackpole had knowledge of this publication. Hallahan's name was printed on the official ballot used at that election, and his name was not written thereon by any elector. At that election Stackpole received 1,554 votes; Hallahan, 1,794; and McMaster, 1,181. All these ballots were duly and regularly counted and canvassed, and the returns duly made to the clerk and recorder within the time allowed by law. They were counted and tabulated by the canvassing board, which declared that Hallahan had received the highest number of votes for county treasurer, and declared him elected, and issued him a proper certificate. Hallahan qualified for taking said office by filing his oath and bond. The Republican party, People's party and Democratic party are each political organizations existing in said county. The business of D. F. Hallahan is that of wholesale liquor dealer, and his residence and business address is Anaconda, Mont. The business of the chairman of the county committee of the People's party is that of physician. His name is A. H. Mitchell, and his business address and residence are Deer Lodge, Mont. The business of the secretary of the committee, E. B. Hosford,

is that of bookkeeper, and his business address and residence are Anaconda, Mont. Contestant, E. S. Stackpole, resides at the town of Deer Lodge, which was his business address, and his business was, at the time said convention was held and certificate filed, that of justice of the peace. That the residence of the chairman of the said Republican convention was Anaconda, Mont.; his business, merchant; his business address, Anaconda, Mont. That the residence of the secretary of said Republican convention was Deer Lodge, Mont.; his business, hotel clerk; his business address, Deer Lodge, Mont.

Upon these findings the court filed the following conclusions of law:

" (1) That the contestee, D. F. Hallahan, was not nominated for the office of treasurer of Deer Lodge county, Mont., to be voted on as a candidate at the general election held for county and other offices in the state of Montana, on November 6, 1894, by any convention of delegates representing a party or principle, nor by any committee duly authorized for that purpose by such a convention, nor by the electors of said county.

(2) That the name of said Hallahan was improperly printed upon the official ballot prepared for said election by the clerk and recorder of said Deer Lodge county.

(3) That the said Hallahan was not elected to the said office of treasurer of Deer Lodge county at said election, and is therefore not entitled to hold said office.

(4) That E. S. Stackpole, the contestant, did not receive the highest number of legal votes, and is therefore not entitled to be declared elected, nor to hold said office of treasurer for said county of Deer Lodge.

(5) That no other candidate or person received any greater number of votes than the said E. S. Stackpole, and there is therefore no other person entitled to be declared elected or to hold said office.

(6) That no one was elected to the office of treasurer of Deer Lodge county at the general election held for county and other officers in the state of Montana on November 6, 1894, and said election was void as to said office.

Let judgment be entered accordingly, each party paying his own costs.''

Judgment was then entered that neither Stackpole nor Hallahan had been elected treasurer of Deer Lodge county. As noted above, each party appeals.

The portions of sections 11 and 12 of the act of March 13, 1889, commonly called the ''Australian Ballot Law,'' which are applicable to this contention, are as follows:

'' Sec. 11. Whenever any person nominated for public office as in this act provided, shall at least twenty days before election, * * * * in a writing signed by him, notifying the officer with whom the certificate nominating him is by this act required to be filed, that he declines such nomination, such nomination shall be void. * * * *

''Sec. 12. Should any person so nominated die before the printing of the tickets, or decline the nomination, as in this act provided, or should any certificate of nomination be or become insufficient or inoperative from any cause, the vacancy or vacancies thus occasioned may be filled in the manner required for original nominations. If the original nomination was made by a party convention which had delegated to a committee the power to fill vacancies, such committee may, upon the occuring of such vacancies, proceed to fill the same. The chairman and secretary of such committee shall thereupon make and file with the proper officer a certificate setting forth the cause of the vacancy, the name of the person nominated, the office for which he was nominated, the name of the person for whom the new nominee is to be substituted, the fact that the committee was authorized to fill vacancies, and such further information as is required to be given in an original certificate of nomination. The certificate so made shall be executed in the manner prescribed for the original certificate of nomination, and shall have the same force and effect as an original certificate of nomination. When such certificate shall be filed with the secretary of the state, he shall, in certifying the nominations to the various county clerks, insert the name of the person who

has thus been nominated to fill a vacancy in place of that of the original nominee. And in the event that he has already sent forth his certificate, he shall forthwith certify to the clerks of the proper counties, the name and description of the person so nominated to fill a vacancy, the office he is nominated for, the party or political principle he represents, and the name of the person for whom such nominee is substituted.''

The People's party convention delegated to its county committee power to fill vacancies on the People's party county ticket. The county committee filled the vacancy caused by the declination of Whitmire by nominating Hallahan, and by filing a certificate of his nomination with the county clerk. That certificate was defective; and did not comply with the provisions of said sections 11 and 12, in the particulars as follows, which we will note seriatim:

(1) Whitmire did not '' decline the nomination as in this act provided.'' Section 12. To decline a nomination as in the act provided is to notify, in writing signed by the party declining, ''the officer, with whom the certificate nominating him is by the act required to be filed, that he declines such nomination.'' Section 11.

(2) Hallahan's certificate itself does not show that he was nominated to fill a vacancy.

(3) The certificate does not set forth the cause of the vacancy.

(4) The certificate does not give the name of the person for whom Hallahan was to be substituted.

(5) The certificate does not set forth that the committee had authority to fill the vacancy.

(6) The certificate does not set forth in direct language the business address of Hallahan.

(7) The certificate does not set forth in direct language the business address of the chairman or secretary of the People's party committee.

In these seven items, in making and filing of Hallahan's certificate, it did not technically comply with the provisions of

section 11 and 12 of the Australian ballot law.    For these rea-
sons the district court held that Hallahan was not nominated,
and, not being nominated, was not elected treasurer of Deer
Lodge county.

*W. H. Trippet* and *Rogers & Rogers,* for Plaintiff.

All the legal points involved in this case have been adjudi-
cated by this court, and in favor of the contestant, in *Price*
v. *Lush,* 10 Mont. 61.    The nomination of Hallahan cannot
be treated as an original nomination made by the People's
party convention, as was the nomination of Benton, adjudged
to be in *State* v. *Benton,* 13 Mont. 306, for the apparent rea-
son that said convention made an original nomination in the
person of Whitmire, and when the convention passed a resolu-
tion empowering the county committee to fill all vacancies then
existing,  there was no vacancy existing in the office of county
treasurer.    Counsel cited also *Bowers* v. *Smith,* 111 Mo. 45;
33 Am. St. Rep. 491; *Ferris* v. *Higley,* 20 Wall 375.

*T. O'Leary* and *Smith & Word,* for Defendant.

If section 12, of the act of 1889, is to be literally followed
in all cases, it must be conceded that the certificate in this case
falls short of the requirements of that section.    That section
is, however, intended to be followed only when a certificate of
nomination has been made and filed with the county clerk.
(See *Lucas* v. *Ringsrud,* 53 N. W. Rep. 426.)    If the case of
*Price* v. *Lush,* 10 Mont. 61, is to be followed, then the cer-
tificate of Hallahan is defective; but if the doctrine in the later
cases of *Simpson* v. *Osborne,* 52 Kan. 328, and *State* v. *Ben-
ton.* 13 Mont. 306, is correct, then the certificate of Hallahan
conforms thereto.    (See as to the proper construction to be
given to section 19, of the ballot law of 1889.    *Allen* v. *Glenn,*
17 Col. 338; 31 Am. St. Rep. 304; *Bowers* v. *Smith,* 111 Mo.
45; 33 Am. St. Rep. 491; *State* v. *Saxon,* 30 Fla. 668; 32
Am. St. Rep. 46; *Simpson* v. *Osborne,* 52 Kan. 328; *Rothburn*
v. *Hamilton,* 37 Pac. Rep. 20; *Boyd* v. *Mills,* 53 Kan. 594.)

The doctrine as laid down in *Price* v. *Lush,* 10 Mont. 61, if followed to its logical end, establishes this condition of affairs: That the acts of officers of a committee or convention are made to control the election, and may disfranchise a large majority or plurality of the voters of any division of a state or even of the whole state. This is contrary to the general doctrine on the subject, that the acts of any officer of registration or election, when free from fraud, will not vitiate an election or default the will of the voters. (McCrary on Elections, 3105.) The court below found that the votes cast for each of the candidates for treasurer were all cast by legal and qualified electors, and that contestee Hallahan received a plurality of 240, being the highest number of the votes of the legal or qualified electors and hence legal votes, and under the state constitution (Const. Art. 9, § 13), he was by the canvassing board declared elected, and should be so declared by the court. (McCrary on Elections, §§ 292, 293; *Commonwealth* v. *Cluly,* 56 Pa. St. 270; *Sanders* v. *Haynes,* 13 Cal. 145; *State* v. *Smith,* 14 Wis. 497; *Opinion of Judges,* 32 Me. 597; *State* v. *Boat,* 46 Mo. 528; *State* v. *Vail,* 53 Mo. 97; *People* v. *Clute,* 50 N. Y. 45.)

DE WITT, J.—We are of opinion that the learned judge of the district court was justified in holding, as he did, as to Hallahan's certificate in this case, on the authority of *Price* v. *Lush.* 10 Mont. 61. We are also of opinion that, while the judgment in *Price* v. *Lush,* was perhaps correct, the doctrine of that case must be modified in some respects. *Price* v. *Lush,* was one of the pioneer American decisions upon the Australian ballot law, and at the time of its rendition no American authority was at the command of this court.

As to the decision of *Price* v. *Lush,* perhaps we may remark that we are willing, in the language of Mr. Justice Field in the case of *Barden* v. *Northern Pacific Railroad Co.,* 154 U. S. 322, 14 Sup. Ct. 288, to " take the responsibility of any conflict with the views now expressed. It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previ-

ous declarations.   These doctrines only will eventually stand
which bear the strictest examination and the test of experi-
ence."

In what respect we shall modify the decision of *Price* v.
*Lush* will appear as we treat the case before us.   We shall
proceed to examine the defects in Mr. Hallahan's certificate,
as they are set forth and numbered in the statement preceding
this opinion, and shall state our views as to what should be the
result of these defects when they are brought to the considera-
tion of the court at the time and under the facts and circum-
stances shown by a court's finding of facts in this case.

1. It is true that Whitmire did not decline his nomination
in the manner provided by sections 11 and 12 of the Australian
ballot law.   That statute provides that a written declination
shall be filed with the officer with whom the certificate of
nomination of such person declining is required to be filed.
The county clerk is that officer in this case.   But Whitmire's
certificate of nomination had never been filed.   He refused the
nomination before the time expired in which his certificate
must be filed.   The county clerk had no evidence filed with
him showing that Whitmire had been nominated.   He officially
knew nothing about Whitmire's nomination.   If a nominee de-
clines a nomination, it certainly is an expedient provision of
law that the officer, holding the official record of the nomina-
tion shall have a formal written declaration of the declination
of the candidate, that such officer may have substantial au-
thority for leaving a nominee's name off of the ticket.   But
the county clerk needed no such authority in this case to leave
Whitmire's name from the ticket.   He never would have put
his name on the ticket.   He never had authority so to do.
What is the substantial reason, then, of requiring the county
clerk to have authority to leave Whitmire's name off of the
ticket when he never had authority to put it on?   It would be
a ceremony wholly useless to any one, benefiting no one, se-
curing no one any rights, and the omission of it working no
one any wrong.   Without holding fully, in this respect, that

the reason of the law ceasing the law ceases, for there might perhaps be circumstances when the question could be raised in some connections, which do not now occur to us, where we might not be prepared to hold that the law ceased, yet we do hold that under the findings of fact in this case, which we shall more fully discuss below, the omission of Whitmire to file a declination with the county clerk was not such a substantial disregard of the statute as to wholly nullify Hallahan's nomination, in consideration of the other facts of this case, and the time and place and manner in which the objection was made for the first time.

2. Our view of this defect No. 1 disposes of defect No. 2. (See statement of facts.) Hallahan's certificate did not show that he was nominated to fill a vacancy, but, as Whitmire's certificate had never been filed, the information to the county clerk that Hallahan's nomination was to fill a vacancy was not useful or important. When Hallahan's certificate came to the county clerk it worked no change in the records as they were before the clerk. No nomination having been filed with the county clerk, he had no substitution to make. Hallahan was not to be put in the place of any one already on the records of the clerk. By no possibility could any one be injured upon the records with the clerk. Again, was this such a substantial disregard of the statute as should nullify Hallahan's nomination, when the question is raised as it is in this case?

Defects 3 and 4 are that the certificate does not set forth the cause of the vacancy, and does not give the name of the person for whom Hallahan was to be substituted. These defects fall under the same view as we have expressed as to those numbered 1 and 2.

5. The fifth defect is that the certificate does not set forth that the committee had authority to fill the vacancy. This is true. The law requires that this fact should be set forth. The certificate did not give this fact. It was a fact, however, that the committee did have authority to fill a vacancy. See the facts as set forth in the statement of the case. Therefore, the

committee having full power to fill the vacancy, is the fact that they did not state this in the certificate such a defect as shall nullify the election, under the circumstances before us in this case?

6 and 7. The certificate does not set forth in direct language the business address of Hallahan, or that of the chairman or secretary of the People's party committee. The certificate gives the name and the address and the business of both Hallahan and the chairman and secretary of the committee. The statute says that the certificate shall give the business address also. We are of opinion that, when the name and business and address are given, it is an extremely technical objection to say that the business address is not, in effect, given.

Such are the defects in the certificate of Hallahan's nomination. Technically, these defects are in disregard of the provisions of sections 11 and 12 of the ballot law.

As we have shown, and as we think would be accepted by anyone, none of these defects are extremely substantial matters, when first brought to the attention of a court, as in this case. But we wish here to guard our language carefully. We will state that it may be that there are times, circumstances, or places, or manner of raising the question where and when the defects described may, by a court, be considered, for some reasons, substantial. But in this inquiry we limit ourselves to the consideration of these defects as they are brought before the court at this time, in the manner and under the circumstances, and in connection with the facts as they appear by the findings of the court in this case. We believe that, from the point of view which we occupy, and which the district court occupied, as we shall demonstrate below, these defects in Hallahan's certificate are of the nature of the mint, the anise, and the cummin, and not of the weightier matters of the law. (Matthew, xxiii., 23.)

It is now important to note that the defects in Hallahan's certificate were simply the absence of statements of certain facts, and not the absence of the existence of the facts. While

it is not stated in the certificate to be the fact, still it is the fact, that Whitmire declined his nomination in the only manner practicable for him to make his declination.    Also it is the fact that Hallahan was nominated to fill the vacancy.    It is the fact that the cause of the vacancy was Whitmire's declination. It is the fact that Whitmire was the person for whom Hallahan was substituted.    It is the fact that the committee had authority to fill the vacancy.    It is the fact that the business address of Hallahan and the chairman and secretary of the People's party committee was the same as the address of these persons given in the certificate.    It is the fact that Hallahan was duly nominated by the committee having such authority. He was qualified to hold the office.    He received 1,794 of the votes cast, a plurality of 240 over any other candidate.    The ballots cast for him were regular, and were cast by legal voters. He was the choice of the nominating authority of his party. He was the choice of the voters of his party.    His nomination, or his certificate of nomination, was never attacked, until after an election, the honesty and fairness of which have never been questioned.

Therefore we come to this proposition:    Under all the facts in this case, does the Australian ballot law contemplate that an election shall be declared null by reason of the defects in the nominating certificate such as exist in this case?    We think not.

In holding this view, we are constrained to depart, to some extent, from the doctrine announced in *Price* v. *Lush*, supra. In that case it was said:    "The statement of contest points out many particulars wherein the foregoing requirements of the statute have not been complied with.    Are these provisions directory or mandatory?    When this question is decided, the appeal will be determined."    10 Mont. 68.    In the conclusion of the opinion it was said:    "The principle which has called into being this law, that prescribes the conditions for the nominations of candidates for office before the day of election, demands the enforcement of every provision."    10 Mont. 72.

That case has generally been thought to hold that every pro-

vision of the ballot law must be strictly complied with, or the election of a candidate not so complying will be void. But it was not necessary to so hold in that case. The case was decided upon the pleadings. It was held that the statement of the contest was sufficient in law. That statement set forth a violation of almost every provision of the ballot law. All that this court necessarily held in that case was that a motion to quash the statement should not have been sustained. But we are satisfied that the decision went too far in holding absolutely (if it did so, as generally thought) that all the provisions of the ballot law are mandatory, to the extent of invalidating an election if some detail as to a nominating certificate is omitted. The law may be mandatory in this: that, as it requires certain things to be done, if the direct question arose as to their being done or left undone, in some proceeding to determine that question, a court might hold that they should be done. As, for instance, the issuing of some process forbidding the filing of the certificate which did not comply with the law. (*Miller* · v. *Pennoyer*, 23 Or. 364, 31 Pac. 830.) But that is a different proposition from holding that, if such things are not done, the result must be disenfranchisement of a plurality or majority of the voters of the district.

In this connection we cite as follows from the Oregon case, just above referred to: "But however this may be, and whatever may be the correct interpretation of section 49, we are all agreed that the mistake, if it was a mistake, in printing the name of Mr. Pierce on the ' official ballot,' in both the People's and democratic groups of electors, did not deprive the voter who cast such a ballot of the elective franchise, or the candidate for whom it was cast, of the benefit of such vote. Under the law as it now exists, neither a voter nor candidate has any control or voice whatever in the arrangement and publication of the names or forms of the ballot, and the voter is either compelled to vote the ' official ballot,' as prepared by the county clerk, or not vote at all. In such case, in the absence of an affirmative declaration in the statute that a ballot containing the name of a candidate in more than one place is

void, and shall not be counted, we are unable to agree to the doctrine that an error of the county clerk in construing a doubtful provision of the law should disenfranchise a large number of voters, who are in no way responsible for the error or mistake; and such is the effect of the decisions under similar ballot laws. (*Bowers* v. *Smith*, 111 Mo. 45, 17 S. W. 761, 20 S. W. 101; *Allen* v. *Glynn*, 17 Col. 338, 29 Pac. 670; *Northcote* v. *Pulsford*, 44 Law J. C. P. 217.) The law is 'mandatory,' in the sense that it demands and requires the county clerks, in the preparation of the 'official ballot,' to strictly comply with all its provisions, but not in the sense that a voter's right to exercise its elective franchise will be lost because of some technical mistake of the county clerk in printing the names of candidates upon the ballot. Such a construction of the law would not only render the election invalid on account of an honest mistake of a county clerk, but would open the door to the gravest fraud. It would place the power in the hands of a dishonest officer to disenfranchise the voters of his county, as well as cause the defeat of any particular candidate. To defeat the will of the people or a particular candidate, it would only be necessary to furnish the electors, or a part of them, with ballots slightly variant or differing from those prescribed by law. Unless the law is clearly mandatory, or in some way declares the consequences of a departure from its provisions, the court ought not to defeat the will of the people, when fairly expressed, because of some technical error or mistake in the form of the ballot; and in this case there is no claim or suggestion of fraud on the part of any one, or that the returns now in the possession of the secretary of state do not correctly represent the will of the people, as expressed at the polls.''

As to the views which courts have taken of defects in certificates of nomination, and as to the spirit of the provisions of the Australian ballot law, we quote from the following decisions:

''We are unable to see that very serious harm can come from the printing of the name of a candidate on the official

ballot, even though the certificate of his nomination be informal. The people, on election day, will vote only for the candidates of their choice, and are not likely to be seriously misled by any fraudulent or unauthorized nomination. On the other hand, most deplorable consequences might ensue if contentions over the regularity of nomination papers are to be prolonged past the time when the officers charged with the duty of certifying to the nominations, and causing ballots to be printed, are required by law to act in preparing for the election.'' (*Simpson* v. *Osborn*, 52 Kan. 328.)

''The grand design of the Australian ballot law was the purity of elections, and to protect the voter, and public at large, from the effects of fraud and intimidation; and the construction given the act should, if possible, be in harmony with its beneficent object. A cardinal rule for the construction of statutes is that, in case of ambiguity in an act, the courts will adopt that construction best adapted to promote the general object, and most comformable to reason and justice. (See Sedg. St. & Const. Law, 196.) * * * We must not, however, be understood as holding the provision of the ballot law under consideration to be mandatory. Generally speaking provisions which are not essential to a fair election will be held to be directory merely, unless the contrary clearly appears from the act itself. *State* v. *Russell*, 34 Neb. 116, 51 N. W. 465, and authorities cited.'' (*State* v. *Allen* (Neb.) 62 N. W. 35.)

''Statutes tending to limit a citizen in the exercise of the right to vote should be liberally construed in his favor, and exceptions which exclude a ballot should be restricted, rather than extended, so as to admit the ballot if the spirit and intention of the law is not violated, although a' liberal construction would violate it. The result, as shown by the ballots deposited by legal electors, must not be set aside, except for causes plainly within the purview of the statute.'' * * * * ''The object intended to be effected was the independence of the voter, and this was sought to be secured by prescribing to a certain extent the form of the ballot, and excluding from

it whatever was within the prohibition of the provision, and thereby securing the secrecy of the ballot; inviolable secrecy as to the person for whom an elector may vote being the material guaranty of the constitutional mandate that voting at popular elections shall be by ballot. (*State* v. *Anderson,* 26 Fla. 240, 259, 8 South. 1.) The nearer the lawful approach to a perfect uniformity of ballots, the more perfectly is the secrecy of the ballot, and consequently the independence of the voter, secured. The greater the uniformity, the less the possibility of distinguishing marks. It is, however, not to be lost sight of, that a ballot will never be vitiated by anything which is not clearly within the prohibiting words and meaning of the statute. The elector should not be deprived of his vote through mere inference, but only upon the clear expression of the law.'' (*State* v. *Saxon,* 30 Fla. 668.)

''The departure from the law in matters which the legislature has not declared of vital importance must be substantial in order to vitiate the ballots. This appears to be the general current of all the authorities. *In Bowers* v. *Smith,* 111 Mo. 61, 20 S. W. 101, it is said: ' If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. In the absence of such declarations, the judiciary endeavor, as best they may to discern whether the deviation from the prescribed forms of law had or had not so vital an influence as to prevent a full and free expression of the popular will.' '' (*Boyd* v. *Mills,* 53 Kan. 594.)

Returning again to *Price* v. *Lush,* we observe that the doctrine was there invoked that, by the adoption of a statute of a foreign country, the subject of which was new to this jurisdiction, we impliedly adopted the construction given to such statute by the courts of such foreign country, provided our own statute, as enacted, was silent as to the matter of construction. Eminent authority was cited in support of that doctrine, as remarked in *State* v. *Barber,* (Wyo.) 32 Pac. 14. That this general doctrine should obtain we have no doubt. It has

often been declared by this court. (*Lindley* v. *Davis*, 6 Mont. 453; *Territory* v. *Stears*, 2 Mont. 330; *First National Bank* v. *Bell S. & C. Min. Co.*, 8 Mont. 32.)

But we think that in *Price* v. *Lush*, the doctrine should have been taken with a modification, which escaped the attention of the court. The Australian ballot law was adopted from a monarchical government,—a limited monarchy, perhaps, but still of the nature, of a monarchy. The law was brought from such a government to a republic. In the former the tendency is to limit and restrict the electoral franchise. In the latter the tendency is to extend the same. The particular form of ballot law known as the "Australian System" was new to our jurisdiction. But construction of election laws generally was not with us a new field of law; and, in the construction of election laws, the whole tendency of American authority is towards liberality, to the end of sustaining the honest choice of the electors. As said by Chief Justice Groesbeck, in *State* v. *Barber* (Wyo.) 32 Pac. 28: "Although our statute is a very faithful copy of the Australian ballot law, I see no reason for adopting the construction of the British courts, which appears to be most rigid. I do not see why this law should be more strictly construed than any other statute, or why different rules of construction from those invariably followed by the courts should be adopted in construing the statute." See, also, cases above cited, and cases cited in the brief of counsel for Hallahan.

We are of opinion that an election law imported from a monarchy to a republic should therefore not be subjected strictly to the rule that the importation of a statute imports also its construction. In this respect, and for the reason suggested, we are of opinion that *Price* v. *Lush* extended the rule to an application not warranted by our history, our institutions, and the former decisions of American courts upon the construction of election laws. These views lead us to the opinion that the provisions of our Australian ballot law should not be construed as strictly mandatory, when the question of their

observance or disobedience is raised under the facts and circumstances found in the case at bar. *Price* v. *Lush,* however, is distinguishable from the case at bar in this respect, as remarked above in this opinion, that that case was decided upon the pleadings, and nearly the whole ballot system appeared to have been disregarded. It did not in that case appear that facts omitted to be stated in the certificate were absolutely existent; but in the case before us the defects in the certificate of nomination were simply omissions to state facts not particularly substantial, when, indeed, the facts so omitted to be stated did exist, and were so found by the court on the trial. That was not the case in *Price* v. *Lush.*

As to whether the provisions, here under consideration, of the Australian Ballot Law, as to certifying a nomination, are to be considered directory or mandatory, we are of opinion that the correct view is this: That while courts may have held that such provisions are mandatory, when the question was directly raised in some proceeding demanding that such provision should be complied with, or in some proceeding asking that an officer be required to file a certificate which was defective, and he made such defect a defense for his refusal, yet they should not be held to be mandatory in a case like the one at bar, where the nomination has been duly made, a certificate filed, the name placed upon the ballot, the candidate voted for and elected by a plurality of all the legal votes cast, and the effect of giving a mandatory construction of the provision under consideration is absolutely to disenfranchise a plurality of the voters of the district, when no question is made that their will has not been fully, fairly, and honestly expressed at the polls. (*State* v. *Barber* (Wyo.) 32 Pac. 28; *Lucas* v. *Ringsrud,* 3 S. D. 355, 53 N. W. 426; *State* v. *Saxon,* 30 Fla. 668, 12 South. 218.)

In this connection section 13 of article IX. of the constitution is pertinent: " In all elections held by the people under this constitution, the person who shall receive the highest number of legal votes shall be declared elected."

To hold such provisions of a law mandatory is not within the

rules as to mandatory and directory construction of statutes. We said in *First National Bank* v. *Neill*, 13 Mont. 382. "As to whether language should be construed as mandatory or directory, the doctrine is well stated in *Wheeler* v. *City of Chicago*, 24 Ill. 105, 76 Am. Dec. 736, as follows: "The word "may" is construed to mean " shall" whenever the rights of the public or third persons depend upon the exercise of the power or performance of the duty to which it refers. And so, on the other hand, the word " shall " may be held to be merely directory when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or the individual, by giving it that construction; But, if any right to any one depends upon giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit. But, where no right or benefit to any one depends upon the imperative use of the word, it may be held to be directory merely." So in the case at bar. The moving party's right to his compensation given by statute for the trouble and expense of his motion depends upon giving the word ' shall ' an imperative construction, and, as remarked in the Illinois case, ' the presumption is that the word was used in reference to such right or benefit.' " (See, also, *Blake* v. *Railroad Co.*, 39 N. H. 435; *Ex parte Jordan*, 94 U. S. 251; Sedg. St. & Const. Law. 316–325.)

We note the following from Endlich on Interpretation of Statutes, section 431: " When a statute requires that something shall be done or done in a particular manner or form, without expressly declaring what shall be the consequence of noncompliance, the question often arises, what intention is to be attributed by inference to the legislature? Where, indeed, the whole aim and object of the legislature would be plainly defeated if the command to do the thing in a particular manner did not imply a prohibition to do it in any other, no doubt can be entertained as to the intention." Section 433: " It may, perhaps, be found generally correct to say that nullification is the natural and usual consequence of disobedience (and, that,

where an act requires a thing to be done in a particular manner, that manner alone must be adopted). But the question is in the main governed by considerations of convenience and justice, and when nullification would involve general inconvenience (or great public mischief) or injustice to innocent persons, or advantage to those guilty of the neglect, without promoting the real aim and object of the enactment, such an intention is not to be attributed to the legislature." Section 436. "On the other hand, the prescriptions of a statute (often) relate to the performance of a public duty; and to affect with invalidity acts done in neglect of them would work serious general inconvenience or injustice to persons who have no control over those intrusted with the duty, without promoting the essential aims of the legislature. In such case, they are said not to be of the essence or the substance of the thing required, and, depending upon this quality of not being of the essence or substance of the thing required, compliance being rather a matter of convenience, and the direction being given with a view simply to proper, orderly, and prompt conduct of business, they seem to be understood as mere instructions for the guidance and government of those on whom the duty is imposed, or, in other words, as directory only. The neglect of them may be penal, but it does not affect the validity of the act done in disregard of them. It has often been held, for instance, when an act ordered a thing to be done by a public body or public officers, and pointed out the specific time when it was to be done, that the act was directory only, and might be complied with after the prescribed time. Such is, indeed, the general rule, unless the time specified is of the essence of the thing, or the statute shows that it was intended as a limitation of power, authority, or right." Section 437. "In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not indispensable to the validity of the proceedings themselves, unless a contrary intention can be gathered from the statute, construed in the light of other rules of interpretation."

Under these views of directory and mandatory statutes, we

cannot hold that the matters omitted from Hallahan's certificate were mandatory, when the question is raised as it is in this case. The statute does not declare that noncompliance with these matters shall nullify the election. (Endlich on Interpretation of Statutes, § 431; *Boyd* v. *Mills*, 53 Kan. 594, 37 Pac. 18; *Keller* v. *Toulme* (Miss.) 7 South. 508; *People* v. *Board of Canvassers*, 129 N. Y. 395.) The whole aim and object of the legislature are not not defeated by such noncompliance. (Endlich on Interpretation of Statutes, § 431.) If the election is to be nullified, it would, as observed in Endlich, involve general inconvenience and great public mischief and injustice to innocent persons, without promoting the real aim and object of the legislature. (Endlich on Interpretation of Statutes, § 433.) We cannot believe that such was the intention of the act.

Referring again to the case of *First National Bank* v. *Neill*, quoted above, we have to observe in the case at bar that the right of no one depends upon giving these provisions of the statute a mandatory construction. No right is preserved by such construction, but, on the other hand, a right would be destroyed; that is, the right of the person having the highest number of legal votes cast to be declared elected. (Const. Art. IX., § 13.) But, by giving these provisions a directory construction, this same right is preserved. Surely, such construction should prevail in this case. Such are our views as to this important matter.

It was claimed in the argument that our decision in *State* v. *Benton*, 13 Mont. 306, looked in the direction of the views now expressed. If it did, we are satisfied that it looked in the right direction. We said in that case: "The decision in this case is placed solely upon the ground discussed hereinbefore, and all other questions are reserved." So in this case at bar, we limit our remarks to the facts of the case, in this, namely, that when such defects in a nominating certificate as existed in the one which we have considered are brought before a court in a proceeding such as the one at bar, and with the facts as they are found here, we are of opinion that the said described

requirements of the Australian ballot law, as to certifying nominations, must be held to be directory only. Any other construction of these provisions of the Australian ballot law would convert a great reform measure into a trap and a snare for the innocent and the honest, and would subject the will of the people in elections to the accidents of inadvertence and the tricks of the disingenuous. While the statute would seek to cast out one evil spirit, it would take into the political house thus swept and garnished seven other more dangerous spirits, and the last condition of the state would be worse than the first. (Luke xii, 24, 26.)

There need be no new trial in this case. The findings are all made, and are not attacked. They are sufficient upon which to enter judgment. (*Woolman* v. *Garringer*, 2 Mont. 405; *Collier* v. *Ervine*, Id. 557; *Barkley* v. *Tieleke*, Id. 435.)

It is ordered that the judgment of the district court be reversed, and that the case be remanded, with instructions to dismiss the contest, and adjudge that D. F. Hallahan is the duly-elected treasurer of Deer Lodge county. Remittitur forthwith.

*Reversed.*

PEMBERTON, C. J., concurs.

HUNT, J., (*concurring*).—I concur in the conclusion and the reasoning of the learned opinion of Justice De Witt. But I regard the decision of the court as a reversal, rather than a modification, of the case of *Price* v. *Lush*, and, so regarding it, I willingly concur. I have never believed that the doctrine in the case of *Price* v. *Lush* could be sustained. In my judgment, it is contrary to the intent of the law itself, as well as the spirit of our government, and to the letter of the constitution of the state, providing that "in all elections held by the people under this constitution, the person or persons who shall receive the highest number of legal votes, shall be declared elected. (Article IX., § 13.) Whatever may be the proper construction to be put upon the provisions of the Australian bal-

lot law, where the regularity of the nominating certificate is questioned before election, I think that after the election is over, and no question of fraud or illegality of the returns, or other questions of that nature, are raised, the constitution is mandatory, and that the person who receives the highest number of votes must be declared to be elected.

