# TERRITORY OF HAWAII EX REL. C. H. WILLIS *v.* D. KANEALII.

### APPEAL FROM CIRCUIT JUDGE, FIFTH CIRCUIT.

### ARGUED NOVEMBER 27, 1905.    DECIDED DECEMBER 19, 1905.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

ELECTION—*not void though nominating petition forged.*

The provisions of the election laws relating to nominations are mandatory in the sense that the officers to whom they apply are

obliged and may be required to comply with them before election; but a failure to comply with them does not, in the absence of a provision so declaring, invalidate the election unless it prevents a fair vote. The election of a county supervisor is not void because the signatures to the petition for his nomination were forged.

### OPINION OF THE COURT BY FREAR, C.J.

This is an appeal by the respondent in a quo warranto proceeding from a judgment ousting him, at the instance of an opposing candidate, from the office of supervisor of the county of Kauai, on the ground that the signature upon his nomination petition, which was required (R. L. Sec. 31) to be signed by not less than twenty-five qualified electors and deposited with the secretary of the Territory, were forged. The statute (Id., Secs. 71, 72), provides also that the ballots, which are prepared by the secretary, shall contain the names of all candidates "who have been duly nominated in the manner in this chapter provided, and shall contain no other name." These and other provisions of the general election laws, so far as applicable and except as otherwise provided, are extended to county elections by the county act. Laws of 1905, Act 39, Sec. 29.

The principal question, and the only one that need be decided, is whether these provisions in regard to nominations are mandatory in the sense that noncompliance with them vitiates the election or merely in the sense that the officers or persons to whom they apply are obliged and may be compelled to comply with them prior to an election and are subject to the penalties prescribed by the statutes relating to offenses against election laws or to forgery or other statutes. In our opinion, in the absence of a provision to the contrary, the latter is the correct view in so far as noncompliance with the law in regard to nominations does not prevent a fair vote. It was deemed unnecessary to go into this question in the previous cases of *Kanealii v. Circuit Judge,* on mandamus and prohibition respectively, *ante,* pp. 1, 9.

The case most relied upon by the petitioner is that of *Price v. Lush,* 10 Mont. 61 (9 L. R. A. 467), in which the court held

that the election of one who had not been legally nominated was void under numerous English and British colonial decisions there referred to and on the principle that when one state adopts a statute of another it adopts also the construction put upon it by the courts of the latter.   That decision was made under the Australian ballot system, which has been adopted in this Territory, though, of course, as in all American states and territories, with modifications; but it was overruled, as we understand, by the decision in *Stackpole v. Hallahan,* 16 Mont. 40 (28 L. R. A. 502), in which the court said, among other things:

"In *Price v. Lush,* the doctrine (as to the adoption of the construction of a statute with the statute itself) should have been taken with a modification, which escaped the attention of the court.   The Ausralian ballot law was adopted from a monarchical government,—a limited monarchy, perhaps, but still of the nature of a monarchy.   The law was brought from such a government to a republic.   In the former the tendency is to limit and restrict the electoral franchise.   In the latter the tendency is to extend the same.   The particular form of ballot law known as the 'Australian System' was new to our jurisdiction, but construction of election laws generally was not with us a new field of law; and in the construction of election laws, the whole tendency of American authority is towards liberality, to the end of sustaining the honest choice of the electors."   See also *State v. Fransham,* 19 Mont. 273 (48 Pac. 1).

Other distinctions between the English and American systems are pointed out elsewhere.

From *Blackmer v. Hildreth,* 181 Mass. 29, we quote at some length as follows:

"Under our system of elections the voter receives at the polls from the election officers an official ballot, of which he does not know and is not expected to know anything except what appears upon its face; and as a rule it is impossible, as in this case, by an inspection of the ballot to ascertain whether or not there has been any irregularity in the preparation of it.   He takes this ballot, sees upon it the names of the candidates, and, having expressed thereon in due form his choice, deposits it in the ballot box.   Thus he duly expresses his will upon the paper pre-

pared and handed to him by the officers of the law appointed for that purpose. All this he does in good faith. * * * It is contended, however, by the petitioner, that the provisions of the election law above recited are mandatory and that as a necessary result the election of Dexter was void. On the contrary the respondents contend that in this case there was no such noncompliance with the provisions as to render the election void. * * * As stated by Andrews, C. J., in *People v. Wood,* 148 N. Y. 142, 147, 'The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors and not to defeat them.' This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure. The provisions above recited with reference to the preparation of the ballot are plainly limited and confined to that purpose. * * * But with the preparation of the ballot the influence of these provisions end. If there be irregularities like those in this case they do not accompany the ballot and taint it in the hands of the voter. This view of the statute gives due weight and scope to the provisions in question, and preserves the sanctity of the right of suffrage and its free and honest exercise. To hold otherwise would be to lose sight of the purpose for which these provisions were made, namely, to provide the method and time for the preparation of the ballot, and would subject our elections to intolerable and perplexing technicalities in no way material to the substantial merits of the controversy or to the freedom and result of the action of the voters. Its natural tendency would be to thwart rather than to secure a true expression of the popular will. We are aware that the courts of England and Australia are inclined to extend the operation of provisions similar to those in question further than is done in this case, but an examination of the English statute would seem to show that it expressly reserves to the courts a supervision over some of the decisions of the officers respecting the preparation of the ballots, upon a petition questioning the election after it has taken place. St. 38 & 39. Vict. c. 40, § 1. *Regina v. Parkinson,* L. R. 3 Q. B. 11. *Mather v. Brown,* L. R. 1 C. P. D. 596. *Howes v. Turner,* L. R. 1 C. P. D. 670. *Monks v. Jackson,* L. R. 1 C. P. D. 683. *Regina v. Miller,* 1 Australian Jur. 156. But whether that be so or not, we are not inclined to adopt a con-

struction which is so manifestly opposed to the general spirit of our laws and the freedom of our elections as that contended for by the plaintiff. For some decisions in other states in accordance with the views herein expressed, see *People v. Wood, ubi supra, Stackpole v. Hallahan,* 16 Mont. 40, and the cases therein cited, overruling in substance the previous case of *Price. v. Lush,* 10 Mont. 61."

In *Jones v. State,* 153 Ind. 440, the court says:

"It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in a full and fair expression of the public will, and, from the current of authority, the following may be stated as the approved rule: All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election, all should be held directory only, in support of the result, unless of a character to affect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void. *Parvin v. Wimberg,* 130 Ind. 561; *Boyd v. Mills,* 53 Kan. 594, 608, 37 Pac. 16, 25, L. R. A. 486; *Miller v. Pennoyer,* 23 Ore. 364, 31 Pac. 830; *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Blankinship v. Israel,* 132 Ill. 514, 24 N. E. 615; *Adsit v. Osmun,* 84 Mich. 420, 18 N. W. 31, 11 L. R. A. 534; McCrary on Elect. §§ 27, 28, 29; Endlich, Int. of Stat. § 433."

This seems to be a correct statement. See also *Brandon v. Navarre,* 102 Mich. 259; *Bowers v. Smith,* 111 Mo. 45; *Allen v. Glynn,* 17 Colo. 338; *Baker v. Scott,* 4 Idaho 596.

In some cases emphasis is put upon the constitutional provision that the person or persons receiving the highest number of legal votes shall be declared elected, but we have a somewhat similar provision (in R. L., Sec. 99), which was enacted by reference by the Organic Act (Sec. 64), namely, that "the number of persons to be elected receiving the highest number of votes in any election district shall be declared to be elected."

In some cases also much has been made of statutory provisions, which are not found in our laws, providing for contests in regard

to nominations before the election takes place. But. in *State v. Elliott,* 17 Wash. 18, the court held in effect that no such statute was necessary, and that the right to require the appropriate officer to send out proper ballots existed independently of statutes. In *Harris v. Cooper,* 14 Haw. 145, we held that the secretary of the Territory "not only may but should decline to place upon the ballots the name of any candidate if his nomination is not signed by at least twenty-five persons, or if among the signers there are not at least twenty-five qualified electors of the district," etc., and "the duty of the secretary in these respects is clearly prescribed by the statute. This duty also is ministerial and the courts may enforce its performance." Moreover, the statute (R. L. Sec. 102), provides that "All records appertaining to * * * any election, in the possession of * * * the secretary of the Territory, shall, at all reasonable times, be open to the inspection of any voter," and (Sec. 31) nominations must be "deposited with the secretary of the Territory not less than thirty days before the day of a general election or twenty days prior to a special election, except on the island of Oahu, where such nomination shall be deposited not less than ten days before the day of any election."

None of the cases that have come to our attention have gone so far as to hold that a fraudulent nomination as distinguished from a merely illegal nomination does not invalidate the election, but, on the other hand, no case, so far as we are aware, has held or intimated the contrary. It seems to us that the reason of the rule, which is based upon rights of the voters and the absence of a provision making the election void for noncompliance with the requirements for nomination, applies equally in both cases.

The circuit judge did not find that the respondent himself was implicated in the fraud or forgery. If he was, and should be convicted, doubtless the office would be vacated or he could be ousted from it under section 18 of the Organic Act.

The judgment appealed from is reversed.

*J. D. Willard* for relator.

*W. S. Edings* for respondent.