No. 81-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

DAVE STEADMAN and RUDY BOEHM,

                              Petitioners and Appellants,

        vs.

DAVID L. HALLAND, Election Administrator,
County of Yellowstone, State of Montana,

                              Respondents and Respondents,

        and

RICHARD SHAFFER,

                              Intervenor.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Joseph B.Gary, Judge presiding.

Counsel of Record:

    For Appellants:

        David Steadman, Pro Se, Billings, Montana
        Rudy Boehm, Pro Se, Billings, Montana

    For Respondents:

        Harold Hanser, County Attorney, Billings, Montana
        Moses Law Firm, Billings, Montana

---

                    Submitted on Briefs: November 25, 1981

                              Decided: February 22, 1982

Filed: FEB 2 2 1982

_____
                        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Petitioners, Steadman and Boehm, appeal from a denial of their petition for writ of mandamus in the Thirteenth Judicial District Court, Yellowstone County, wherein the District Court upheld respondent Halland in rejecting petitioners' recall petition. We affirm the District Court.

The following issues are presented to this Court for review:

(1) Did the District Court err in denying petitioners' petition for writ of mandamus?

SUB-ISSUES:

A. Did the recall petition alleging official misconduct meet statutory requirements as to form?

B. Did the respondent properly reject the recall petition on the grounds of double jeopardy?

C. Is Mandamus the proper remedy for petitioners to seek in challenging respondent's rejection of their recall petition?

(2) Did the District Court err in allowing Richard Shaffer to intervene?

This appeal arises from an attempt by petitioners to recall Yellowstone County Sheriff Richard Shaffer in accordance with the provisions of the Montana Recall Act section 2-16-601, et seq., MCA. Petitioners allege no injury to themselves but bring the action as residents and taxpayers of Yellowstone County.

Petitioners allege the following: On November 7, 1980, Shaffer was in Big Timber, which is in Sweet Grass County, driving an official Yellowstone County vehicle; while there, Shaffer and a female companion were ordered off a

farmer's field and shortly afterward they passed the farmer's vehicle, fishtailing and spraying gravel, with the Yellowstone County vehicle; a short time later, when the farmer approached Shaffer in a Big Timber Bar and questioned Shaffer's driving, Shaffer and the woman left the bar; Shaffer returned alone, pulled his badge and warned the farmer to be especially careful in Yellowstone County. The farmer lodged a complaint against Shaffer with the Sweet Grass County Sheriff's office, as a result of which Shaffer was charged with intimidation (a felony) and reckless driving and disorderly conduct (both misdemeanors). The intimidation charge was subsequently dismissed, and Shaffer forfeited a bond as to the misdemeanor charges. He was not tried for or convicted of any of the offenses.

On January 26, 1981, petitioners presented the Yellowstone County Election Administrator (Halland) with a petition for Shaffer's recall for Halland to check against statutory requirements pursuant to section 2-16-616, 617, MCA. The petition was rejected by Halland on January 30, 1981. An amended petition, submitted February 2, 1981, was also rejected by Halland, on February 4, 1981. Halland's reason for rejecting the petitions was that the Yellowstone County Attorney, advised by the State Attorney General's Office, believed that to base the recall petition upon official misconduct, after Shaffer had been charged with misdemeanor offenses because of that conduct, would place Shaffer in double jeopardy. Halland advised petitioners that they were free to seek a writ of mandamus in the District Court compelling Halland to file the recall petition if the District Court determined the petition to be sufficient.

On February 17, 1981, petitioners applied to the District Court for a writ of mandate to compel Halland to accept the recall petition. They alleged that Halland's rejection of their petition was based upon his consideration of substance and legality rather than form and was improper under section 2-16-617, MCA, which limits the function of the Election Administrator to a determination whether the petition's form satisfies statutory requirements. Petitioners claimed that the petition met statutory requirements as to form, and Halland's rejection of it amounted to the refusal of "an absolute, clear and legal duty."

On February 19, 1981, Judge Speare ordered Halland to "approve the Petition for recall of Yellowstone County Sheriff Richard Shaffer . . . or, that in default thereof, he show cause . . . why he has not done so by the return of said Writ." That same day, the judges of the Thirteenth Judicial District disqualified themselves and called in Eighteenth Judicial District Judge Gary, who accepted jurisdiction on February 23, 1981. The date for the show cause hearing was continued to March 16, 1981.

On March 16, 1981, over petitioners' objections, Richard Shaffer was permitted to intervene in the action and file his answer, wherein he argued that the recall petition was deficient under the provisions of the Montana Recall Act and moved for its dismissal. The show cause hearing was held March 16, 1981; petitioners appeared pro se without counsel and declined to offer testimony, preferring to stand upon their petition. Neither Shaffer, nor Halland, presented testimony. Memoranda were subsequently submitted by all parties, and on July 24, 1981, the District Court entered its findings of fact, conclusions of law, and order denying

petitioners' petition for writ of mandamus and dismissing the action. Petitioners appeal.

I.

Petitioners argue that the District Court erred in denying their petition for writ of mandamus and raise a number of sub-issues, the resolution of one of which is determinative of the larger issue.

A.  The first and most important, indeed the determinative sub-issue in this case, is whether the recall petitions did in fact satisfy the statutory requirements as to form. Section 2-16-616, MCA, requires that the recall petition contain (1) a warning against the misdemeanor offense of signing more than once, or signing at all if not qualified; and (2) the petition itself, which addresses the appropriate filing officer, states the name and position of the official against whom it is directed, sets out "a general statement of the reasons for recall in not more than 200 words," and establishes the nature of a signer's certification; and (3) numbered lines for signature following the heading. "Each separate sheet of the petition shall contain the heading and reasons for the proposed recall as described above." Section 2-16-618, MCA, provides: "The forms prescribed in this part are not mandatory, and if substantially followed, the petition shall be sufficient, notwithstanding clerical and merely technical errors." Section 2-16-617(3), MCA, provides: "Before a petition may be circulated for signatures, a sample circulation sheet must be submitted to the [filing] officer . . . [who] shall review the petition for sufficiency as to form and approve or reject the form of the petition, stating his reasons therefor, within 1 week of receiving the sheet."

-5-

The recall petition submitted to Halland by petitioners contained the following heading:

"WARNING

"(wording identical to that required by statute; no problem with acceptability.)

"RECALL PETITION

"To the County Election Administrator: We, the undersigned qualified electors of the County of Yellowstone respectfully petition that an election be held as provided by law on the question of whether Richard E. Shaffer, holding the office of Yellowstone County Sheriff, should be recalled for the following reason: Sheriff Shaffer acted in a manner to bring discredit to himself and the Department by OFFICIAL MISCONDUCT stemming from an incident in Sweet Grass County on November 7, 1980. (Underscoring added.)

". . . (Certification paragraph is acceptable; there is no dispute in that regard.)

". . . (Signature heading and lines are not challenged.)"

The proposed recall petition was accompanied by a notarized statement of "Reasons for Desired Recall," signed by petitioners.

The District Court's findings and conclusions were substantially that:

(1) The recall petition was defective in that it "stated mere conclusions of alleged misconduct," and it failed to allege facts from which the Election Administrator could determine whether official misconduct had occurred and from which Shaffer could meet those allegations upon a recall ballot.

(2) Even assuming the statement accompanying the petition and the newspaper articles accurately set forth the sheriff's conduct, that is insufficient to meet the standards of official misconduct as set forth in the Montana Criminal Codes.

In its accompanying memorandum, the District Court stated: "In the Petition for Writ of Mandamus, the defects in the petition for recall are not corrected so therefore this opinion could stop at this point and dismiss the Petition for Writ of Mandamus, and perhaps I should." (The opinion went on to address other issues.)

Petitioners now argue that the District Court improperly considered reasons for rejecting the recall petition other than the reason set forth by Halland (double jeopardy). Petitioners also maintain that both Halland and the District Court improperly assessed the recall petition as to legal or substantive sufficiency rather than merely sufficiency of form as required by section 2-16-617(3), MCA.

We disagree. The District Court properly considered the sufficiency of the form of the recall petition. Section 2-16-617(3), MCA, neither limits the District Court's consideration of the sufficiency of the petition to defects found by the filing officer, nor prohibits another party from intervening with its own objections to the form of the recall petition. Section 2-16-617(3), MCA, merely states that the filing officer must state his reasons for rejecting the form of a petition within 1 week. That was done.

This Court has held many times that when there is no testimony and this Court is limited to the record, it is free to make its own examination of the entire case and to make a determination in accordance with its findings. See In re Estate of Jensen (1969), 152 Mont. 495, 500, 452 P.2d 418, 421; Kostbade v. Metier (1967), 150 Mont. 139, 141, 432 P.2d 382, 384. We have also held that if the result reached by the trial court be correct, it will be upheld regardless

-7-

of the reasons given for the conclusion. Spaeth v. Emmett (1963), 142 Mont. 231, 235, 383 P.2d 812, 814-815; Johnstone v. Sanborn (1960), 138 Mont. 467, 471, 358 P.2d 399, 401. The logic of this policy is peculiarly applicable to the case at bar, because the initial review of recall petitions is intended to save the public and government officials the time and expense of circulating and responding to a petition which is fatally defective. The Legislative Council's Analysis of Amendments to Initiative 73 (The Montana Recall and Advisory Act, enacted by Montana voters November 2, 1976), which was incorporated into the minutes of the House Judiciary Committee on February 23, 1977, states at page A-2:

> "New language is included in subsection (3) to provide that the petition form must be approved before it is circulated. A provision of this nature saves trouble for both petitioners and filing officers when a petition is turned in. If the form is approved in advance, petitioners will not be put in a position of gathering signatures on an improper form and then having their petition disqualified."

It would be both wasteful and useless for the District Court to return an obviously unacceptable recall petition to the filing officer for reconsideration just because his reasons for rejecting it may have been improper. Here, the record revealed to the District Court, as it does to this Court, that the recall petition submitted to Halland was fatally defective, and regardless of his reasons for rejecting it, Halland's decision to do so was correct.

A review of the relevant statutes and a reference to the Attorney General's opinion relied upon by petitioners makes it clear to this Court that the defects in the petition found by Halland and the District Court are defects in form. Section 2-16-616(1), MCA, "Form of recall petition,"

-8-

requires that each page of the petition be headed by, among

other things, a general statement of reasons for recall, of

no more than 200 words. Section 2-16-617(4) requires that

when a recall petition is submitted to the filing officer,

it "must be accompanied by a written statement containing

the reasons for the desired recall as stated on the petition."

The Attorney General has stated:

> "The section [2-16-617(4)] requires that both
> the petition submitted for approval and the
> statement attached to the petition explain
> the basis for the recall. As the grounds for
> the desired recall specifically constitute
> part of the form of the petition, the Secre-
> tary of State is empowered to reject the peti-
> tion unless it meets all of the statutory re-
> quirements." 38 Op. Att. Gen. 41 (1979).

We agree that the statement of grounds for recall to be

included in the petition is "part of the form of the peti-

tion" and find that the filing officer not only is "empowered

to" but is required to reject the petition when it does not

comply with statutory requirements. Clearly Halland and the

District Court on review were obliged to consider whether

the statement of reasons for recall met statutory require-

ments.

The District Court correctly considered only the signature

page of the petition, ignoring the attached statement of

"Reasons for Desired Recall," which was obviously appended

only in compliance with section 2-16-617(4), MCA. Section

2-16-616, MCA, limits the statement of reasons for recall in

the petition to 200 words and requires that it be contained

on "each separate sheet of the recall petition." Here, the

accompanying statement is on separate pages and is well over

400 words long. This is not the substantial compliance with

statutory requirements, which would render the statement of

reasons acceptable. An official whose recall will be determined

by election is allowed only 200 words on the ballot to give reasons why he should not be recalled. Petitioners should have briefly stated the alleged acts of misconduct in the body of the recall petition. The sufficiency of form of the recall petition, then, must be determined without recourse to the accompanying statement of "Reasons for Desired Recall."

Section 2-16-616(1), MCA, requires that the recall petition contain "a general statement of the reasons for recall. . ." Petitioners' recall petition states only that "Sheriff Shaffer acted in a manner to bring discredit to himself and the Department by OFFICIAL MISCONDUCT stemming from an incident in Sweet Grass County on November 7, 1980." Such a statement is deficient because it does not acquaint the public, whose signatures are requested, with the alleged acts constituting misconduct, nor does it permit Sheriff Shaffer to respond and defend himself adequately against the allegation of misconduct in the event that an election is required. The "general statement" required by section 2-16-616(1), MCA, demands more specificity than this. We note with approval the standard set forth in Bocek v. Bayley (1973), 81 Wash. 2d 831, 505 P.2d 814, 817:

> ". . . [R]ecall charges are sufficiently speci-
> fic if they are definite enough to allow the
> charged official to meet them before the tri-
> bunal of the people."

We point out also that page C-3 of the original text of Initiative 73, 1976, contains an explanation of the requirement that a statement of reasons for recall be included on each circulation sheet:

> "Such a statement is solely for information
> of the electors and set forth any reason
> causing the dissatisfaction with the public
> official and may be political rather than
> legal in nature."

Clearly a statement of reasons must serve both purposes. Otherwise discontented constituents could initiate a circulation petition by alleging misbehavior in terms so general that the object of the recall effort would be incapable of defending himself, and some electors would sign the recall petition with no idea of what words or acts of the official might have precipitated the recall effort. Therefore, we hold that it is not enough for a recall petition to allege one of the grounds for recall as set forth in section 2-16-603(3), MCA. The recall petition must also include a clear statement of the alleged acts constituting the grounds for recall. The disputed petition in the case at bar contained no such statement. Consequently, it was defective in form and was properly rejected.

A discussion of the remaining issues is not appropriate here. The above determination is dispositive of this action. We are aware that there remain ambiguous provisions in the Montana Recall Act and that legitimate questions may be raised regarding double jeopardy and intervention in reference to those provisions. But this is not the case for considering such questions. The recall petition was fatally defective and the petition for writ of mandamus was properly denied.

Petitioners appeared pro se, and we are traditionally inclined to treat parties more gently who appear without counsel. We must note, however, the time and expense to all parties, and the stress placed upon the court system, by this appeal without the help of competent counsel. Qualified counsel would have realized that the recall petition was fatally defective and that the half-dozen extraneous issues raised by petitioners were not determinative. This

would have saved considerable time and expense by eliminating an unnecessary appeal.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices