No. 86-554

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

KEITH C. RENNIE,

        Contestant and Appellant,

  -vs-

LARRY J. NISTLER,

        Contestee and Respondent.

_____

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Manley & Smith; Brian J. Smith argued, Polson,
Montana

    For Respondent:

        Larry Nistler argued, Polson, Montana

_____

Submitted:  March 18, 1987

Decided:  April 16, 1987

Filed:  APR 16 1987

_____

            Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We affirm in this case the decision of the District Court, Twentieth Judicial District, Lake County, following a contest of election that Larry J. Nistler is lawfully entitled to hold the office of county attorney of Lake County.

In the general election of November 4, 1986, the office of Lake County Attorney was to be filled. The election ballots were printed and used with the names of Keith C. Rennie, as a Democratic candidate, and Larry J. Nistler, as a Republican candidate for that office.

After the election polls were closed, the election judges counted the ballots and the Board of County Canvassers canvassed the returns and certified that Larry J. Nistler, the Republican candidate, was the winner by a margin of 8 votes.

The Democratic candidate, Keith C. Rennie, asked for a recount pursuant to § 13-16-201, MCA. Following the recount, the recount judges determined that the election for county attorney of Lake County had resulted in a tie vote.

The Board of County Commissioners of Lake County, pursuant to § 13-16-506, MCA, appointed Larry J. Nistler to the office of Lake County Attorney.

Keith C. Rennie appeals from the District Court order affirming the recount board. He claims that the report of the recount board that the election had resulted in a tie vote was erroneous for the reason that the election judges, the recount judges, and the recount board have failed to count a ballot (admitted in evidence as contestant's exhibit no. 1) as a vote for Keith C. Rennie; that the addition of

The guiding principle on the acceptance or rejection of ballots in elections is found in § 13-15-102, MCA, which provides:

> No declaration of an election result, commission, or certificate shall be withheld because of a defect or informality in the returns of any election if it can be determined with reasonable certainty the office intended and the person elected.

We determine that a "defect in the returns" would occur if an illegal ballot was accepted by the election judges or a legal ballot rejected.

Section 13-15-102, MCA, is the statutory embodiment of what this Court said in Peterson v. Billings (1939), 109 Mont. 390, 394-95, 96 P.2d 922, 924:

> "This court, in Stackpole v. Helahan, 16 Mont. 40, 40 Pac. 80 [28 L.R.A. 502], on page 57, 16 Mont., and page 85, 40 Pac. announces that 'in the construction of election laws the whole tendency of American authority is towards liberality, to the end of sustaining the honest choice of the electors.' The reason for this rule is that the paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them. (Citing authority.)
>
> "But if, from the marking of the ballot in substantial compliance with the law, the intent and choice of the voter clearly appear, then his ballot should be counted, unless the statute expressly or by clear inference forbids it; otherwise the true spirit of the election law might be violated by subordinating the essence to a mere element of detail, and substance may be sacrificed to form.. . ."

As a prelude to our discussion, we meet first the contention of Nistler, who appeared pro se, and who contended in briefs and in oral argument before this Court that we were bound to accept the findings of the District Court as a

matter of discretion unless that discretion was abused, and that to rule otherwise would "put the Supreme Court in the election booth." In this case, however, the findings of the District Court are based solely on that court's examination of the photocopy of the contested ballot, the same photocopy that is now before us. The District Court also heard oral testimony, but the oral testimony was not helpful with respect to the problems presented by the contested ballot, but rather established for the record that this ballot was in fact rejected by the election judges, the board of canvassers, and the recount board. In the situation before us, we are free to make our own examination of the entire case, and to make a determination in accordance with our findings. Steadman v. Halland (1982), 197 Mont. 45, 51, 641 P.2d 448, 452; Reid v. Park County (Mont. 1981), 627 P.2d 1210, 1214, 38 St.Rep. 631, 635. Moreover, by statute, we are required in equity cases to review all questions of fact arising upon the evidence presented in the record, whether specifications of error are made or not and to determine the same as well as questions of law. Section 3-2-204(5), MCA. We are not, thereby, "putting ourselves in the election booth" anymore than did the District Court in making its determination.

We do, however, agree with the District Court that the voter's intentions are not clearly and plainly shown on the contested ballot. In the general election of November 4, 1986, there were in Lake County 14 national, state and county offices for which candidates were to be elected. In 13 of the 14 races, the voter of the contested ballot wrote in the same name of a candidate who also appeared as a party candidate in the printed portion of the ballot for each office. For each office for which he cast a vote, the voter did not mark an "x" in the box provided, but choose instead

to make a slash line slanting from right to left downward. Although the voter, for each office open on the ballot, carefully wrote in the names of the candidates already appearing on the ballot, his slash line vote appears in the box opposite his write-in for 7 of the candidates. In 5 other instances, the voter wrote in the full name of one of the printed candidates but instead of placing his mark in the boxes opposite his writing, placed his slash line mark in the boxes opposite the printed name of the persons he had written in. Yet, in the 7 constitutional amendments, referenda and initiatives which were also on the ballot, the voter clearly made a proper "x" reflecting his position for or against the 7 different constitutional and initiative propositions. This is in contrast to the slash mark that he used to cast his vote for the state, national and county offices. In the case of the county attorney, his vote appears thus:

FOR ATTORNEY
(VOTE FOR ONE)

[   ] LARRY J. NISTLER - Republican

[   ] KEITH C. RENNIE - Democrat

[ / ] (Handwritten) Keith C. Renne

The District Court also determined, from the face of the ballot for county attorney that the name "Renne" as handwritten, and for which the voter inserted a voting mark is different from the name of "Rennie," the Democratic candidate. The principle of idem sonans would indicate that the individual written in was the same as the Democratic candidate. However, the question naturally arises, was the voter of the contested ballot expressing his intention to vote for Rennie as an individual, but not as a Democratic candidate? We can find no answer in the ballot to this question, nor in the inconsistent method he used in voting

for other office candidates, sometimes opposite the handwritten names and sometimes opposite the printed names, though he had written in names for all county, state and national offices.

Section 13-13-117, MCA, provides that a voter shall cast his ballot by marking an "x" in the square before the name of the individual for whom he intends to vote. The same statute also provides that an elector may write in the name of an individual for whom he wishes to vote in the blank space and may vote for that individual by marking an "x" before the name. Here, the voter did not cast his vote by marking "x's" before the printed or handwritten name of any candidate although he voted by "x's" for constitutional amendments and initiatives. We would not, however, reject his ballot on that ground alone in view of § 13-15-102, MCA, aforesaid. But the question of how his vote should be counted in this instance is not resolved by any state statute. If we regard the vote cast by this elector on the contested ballot as a write-in for the individual named, § 13-15-404, MCA, requires that such write-in votes be entered in the report of the judges in the same place as the votes for other individuals for the same office but shall be identified as write-in votes. Thus, if this ballot had been accepted, the election judges' report should show that Democratic candidate Rennie received so many votes as a Democratic candidate, and 1 vote as a write-in candidate. No state statute tells us that if the write-in vote is cast for an individual who is the same as an individual named in the printed ballot for the same office that we should add the party candidate's vote to the write-in vote to determine the total. While it is arguable that the manner of this voter's casting of his ballot for county attorney indicates his preference for Rennie, it is equally arguable that Rennie was acceptable to the voter as

an individual, but not as a party candidate. So many questions arise from the contested ballot itself as to the intentions of the voter, and the confusion that results from attempting to find a consistency in his method of voting that it becomes clear that his ballot should be rejected, and was properly rejected by the election judges, the canvassers and the recount board. The voter's intent and choice do not clearly appear. Peterson, supra.

Accordingly, we affirm the District Court. No costs to either party.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
The Hon. Robert M. Holter, District Judge, Sitting for The Hon. Frank B. Morrison, Jr.

- 8 -

Mr. Justice Fred J. Weber dissents as follows:

I disagree with the majority conclusion that the voter's intent and choice do not clearly appear in the ballot in question in this case.

I conclude that we must consider not only § 13-15-102, MCA, discussed in the majority opinion, but also § 13-15-202(3), MCA, which is the successor to § 777, RCM (1935), upon which the Peterson v. Billings (1939), 109 Mont. 390, 96 P.2d 922, case was based. Section 13-15-202(3), MCA, provides:

> A ballot or part of a ballot is void and shall not be counted if the elector's choice cannot be determined. If part of a ballot is sufficiently plain to determine the elector's intentions, the election judges shall count that part.

A ballot is not to be counted if the elector's choice cannot be determined. That is, a ballot should be counted if it is sufficiently plain to determine the elector's intentions. That statute is entirely consistent with Peterson, which emphasized the prevailing view of authorities toward liberality in order to sustain the honest choice of the electors. In essence, if the intent of the voter clearly appears, his ballot should be counted. (See quotation from Peterson in majority opinion.)

The key point of the majority opinion appears to be that the word "Democrat" was not handwritten by the voter after the name of Keith C. Renne. That absence appears to raise a question in the majority's mind sufficient to disqualify the ballot for this candidate. I do not agree with that conclusion.

Our essential test is whether or not the choice of the elector can be determined and if his intentions are

9

sufficiently plain from the ballot. Simply stated, it seems entirely clear to me from the ballot that the elector intended to vote for Mr. Rennie. I do not find the presence or absence of party designation significant for this issue. As an example, if the elector had crossed out all of the party designations on the ballot but still marked the ballot in the appropriate squares, I would count those votes.

I conclude that the voter's intention to vote for Mr. Rennie as county attorney is clear and I would reverse the District Court.

_____
Justice

Mr. Justice John Conway Harrison joins in the foregoing dissent.

_____
Justice

10