No. 95-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

GAYLEN MARSH,

       Petitioner and Appellant,

  v.

MIKE OVERLAND,

       Respondent and Respondent.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

             Matthew W. Knierim, Laura Christoffersen;
Christoffersen & Knierim, Glasgow, Montana

       For Respondent:

             Jeffrey M. Hindoien; Swift & Hindoien, Helena,
Montana

FILED

NOV 02 1995

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

CLERK

Submitted on Briefs:  June 1, 1995

Decided:  November 2, 1995

Justice Karla M. Gray delivered the Opinion of the Court.

Gaylen Marsh (Marsh) appeals the decision of the Fifteenth Judicial District Court, Sheridan County, affirming the Sheridan County Recount Board's (Recount Board) Certificate of Recount which declared Mike Overland the winner of the 1994 Sheridan County Sheriff's election. We affirm.

Marsh raises the following issues on appeal:

1. Did the District Court err in concluding that the surname "Marsh" alone on a write-in ballot was insufficient to determine the intent of the voter as required by § 13-15-202(3), MCA?

2. Did the District Court err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname "Marsh"?

3. Did the election judges' failure to properly identify rejected ballots compromise the validity of the entire election?

4. Did the District Court abuse its discretion in awarding attorney's fees to Mike Overland?

Three candidates sought the office of Sheridan County Sheriff in the election held on November 8, 1994. Mike Overland (Overland) and Paul George (George) ran as the Republican and Democrat candidates, respectively. Marsh, who had lost to George in the Democrat primary, initiated a vigorous write-in campaign. He filed a timely declaration of intent to run as a write-in candidate and publicized his candidacy through the local media, as well as with

private posters and mailings. The majority of Marsh's advertising used his full name, "Gaylen Marsh." He also sent potential voters "Gaylen Marsh" stickers which could be placed in the write-in portion of Sheridan County's paper ballots.

Following the election, Sheridan County election officials announced that Marsh had won the election. The initial election results indicated that Marsh received 909 votes, Overland received 902 votes and George received 664 votes. Overland petitioned for a recount pursuant to § 13-16-201(1), MCA.

The Sheridan County Recount Board recounted the votes in the sheriff's election under instruction from the Sheridan County Election Administrator to disallow any ballots which did not specify "Gaylen" or "G." Marsh. Pursuant to this instruction, the Recount Board did not count the following votes:

| 12 ballots | "Marsh" |
|---|---|
| 1 ballot | "Mr. Marsh" |
| 1 ballot | "David Marsh" |
| 1 ballot | "Dave Marsh" |
| 1 ballot | "Gilbert Marsh" |
| 1 ballot | "Lloyd Marsh" |
| 1 ballot | Misspelled or illegible |
| 22 ballots | No "X" marked in the box preceding the name "Gaylen Marsh" |

With the above-listed votes disallowed, the recount showed 903 votes for Overland, 897 votes for Marsh and 664 votes for George. As a result, election officials declared Overland the winner of the election for Sheridan County Sheriff.

Marsh filed this four-count action against Overland and the Recount Board captioned "PETITION for WRIT of PROHIBITION, WRIT of MANDAMUS, for JUDICIAL REVIEW and CONTESTING ELECTION." District

3

Court Judge M. James Sorte issued alternative writs of prohibition and mandamus, but later quashed the alternative writs and dismissed the Recount Board as a party. Marsh subsequently moved to substitute Judge Sorte and District Court Judge John C. McKeon assumed jurisdiction.

Following dismissal of an additional count of Marsh's complaint on motion of both parties, the only claim before the court was a § 13-36-101, MCA, election contest. Marsh petitioned the court to set aside Overland's election pursuant to § 13-36-102(2), MCA, and to issue a certificate of election in his favor pursuant to § 13-16-418, MCA. He argued that the votes for "Marsh" sufficiently demonstrated the voters' intent to vote for him and, therefore, that the twelve "Marsh" votes must be added to his total.

After a hearing held pursuant to §§ 13-36-206 and 13-36-207, MCA, the District Court issued its findings of fact, conclusions of law, and order affirming the Recount Board's decision. The court concluded that the Recount Board properly excluded the "Marsh" votes from Marsh's total and directed that a certificate of election be issued declaring Overland elected as Sheridan County Sheriff. The court also determined that Overland was entitled to costs and attorney's fees under § 13-36-205, MCA. Marsh appeals.

Issue 1

Did the District Court err in concluding that the surname "Marsh" alone on a write-in ballot was insufficient to determine the intent of the voter as required by § 13-15-202, MCA?

4

We review a district court's conclusions of law to determine if they are correct. Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762.

While the specific issue now before us regarding voters' intent in marking write-in ballots is one of first impression in Montana, both statute and case law on the subject of determining voters' intent require that ballots be disallowed unless the electors' intent can be established with reasonable certainty. Section 13-15-202(3), MCA, states:

> A ballot or part of a ballot is void and shall not be counted if the elector's choice cannot be determined. If part of a ballot is sufficiently plain to determine the elector's intention, the election judges shall count that part.

This Court has consistently disallowed ballots when the voters' intent does not plainly appear. See Rennie v. Nistler (1987), 226 Mont. 412, 735 P.2d 1124; Peterson v. Billings (1939), 109 Mont. 390, 96 P.2d 922. We recently summarized the rationale underlying our consistent rejection of ballots where the voters' intent is not clear:

> "[T]he paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them." When such expression cannot be gleaned without speculation, however, the vote is to be voided, to insure a standard of objectivity in our election process. [Citation omitted.]

Spaeth v. Kendall (1990), 245 Mont. 352, 354-55, 801 P.2d 591, 593.

On the facts presently before us, the "Marsh" votes cannot be credited to Marsh without speculating about the voters' intent. There are twenty-eight registered voters in Sheridan County with

5

the surname "Marsh." Four of these individuals--David, Gilbert, Lloyd and appellant Gaylen Marsh--each received at least one write-in vote in the sheriff's election. Moreover, at least four voters clearly cast ballots for a Marsh other than Gaylen: Gilbert and Lloyd Marsh each received one vote and David Marsh received two. While Gaylen Marsh received almost 900 votes, it cannot be determined without speculation that the "Marsh" votes were intended for Gaylen and not for Gilbert, Lloyd or David or, indeed, for one of the approximately two dozen other registered voters in Sheridan County surnamed Marsh.

Marsh argues that, because he was the only write-in candidate who filed a declaration of intent as required by § 13-10-211, MCA, and campaigned for the office, he was the only eligible write-in candidate; thus, he contends that the "Marsh" votes must have been intended for him. While it is true that Marsh was the only official write-in candidate for sheriff under § 13-10-211, MCA, nothing in that statute mandates that "Marsh" votes be counted for him. The effect of write-in votes for persons who have not filed a declaration of intent is controlled by § 13-15-202(1)(b), MCA, which provides that "judges may not count or record write-in votes for candidates who have not filed a declaration of intent as provided in 13-10-211 . . . ."

In addition, Marsh's argument ignores the undisputed fact that voters wrote in the names of Marshes other than Gaylen. Under the facts before us, it is entirely conceivable that some of the "Marsh" ballots were intended for Gilbert, Lloyd or David Marsh.

6

Moreover, the fact that Marsh was the only write-in candidate eligible to be elected does not defeat the voting public's right to vote for whomever they wish. U.S. Const. amend. XV, § 1; Awareness Group v. School District No. 4 (1990), 243 Mont. 469, 474, 795 P.2d 447, 450 (citing Wesberry v. Sanders (1964), 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481). Gilbert, Lloyd and David Marsh were not eligible to be elected sheriff because they failed to file a declaration of intent with election officials. However, their ineligibility for office does not restrict the voting public's right to vote for the person of their choice.

Marsh urges this Court to adopt the so-called "substantial compliance" test utilized by several jurisdictions in interpreting a voter's intent. In Meyer v. Lamm (Colo. 1993), 846 P.2d 862, for example, the Colorado Supreme Court allowed votes for "Lamm," "Miss Lamm," "Ms. Lamm" and "Mrs. Lamm" to be counted in favor of write-in candidate Peggy Lamm, while rejecting ballots containing an incorrect first name or initial. Lamm, 846 P.2d at 877-78. The Colorado court reasoned:

> The evidence adduced at the hearing indicated that Peggy Lamm was the only person in District 13 that had campaigned as a write-in candidate for representative. She was the only person who had filed the requisite affidavit of intent to run and was thus the only person other than Drew Clark eligible to be elected to the office. There was evidence that Lamm's campaign was extensive and vigorous and that she had obtained the editorial endorsement of a number of newspapers in the metropolitan area. Given these facts, as well as the absence of any official instructions to voters that a valid write-in vote must contain more than a last name, we find that the intention of these voters to vote for Peggy Lamm can be ascertained with the requisite certainty.

7

Lamm, 846 P.2d at 877.

While Lamm is factually similar to the present case, we disagree with the result reached by the Colorado court. We fail to see how votes for "Lamm" can reflect the "requisite certainty" of intent in light of votes cast in the same election for "Nancy Lamm," as an example, which the court correctly rejected as insufficiently demonstrating the voters' intent to vote for Peggy Lamm. In our view, the voters' intent under such a factual scenario cannot be determined without the speculation prohibited by Spaeth. See Spaeth, 801 P.2d at 593.

Marsh also relies on Devine v. Wonderlich (Iowa 1978), 268 N.W.2d 620, in which the Iowa Supreme Court concluded that ballots containing only the candidate's surname sufficiently conveyed the voters' intent. The court stated:

> In view of Devine's active candidacy, the publicity and advertising which accompanied it, and the unlikelihood of his being confused with the few other persons having the same surname, none of whom were shown to be politically active, the use of his surname alone was sufficient to indicate a vote for him.

Devine, 268 N.W.2d at 627 (emphasis added). While the Devine court found it unlikely that votes cast for "Devine" were intended for any of the other ten Devines residing in the county, we cannot properly make such an assumption under the facts of this case. Here, while the record does not reflect that Gilbert, David and Lloyd Marsh were politically active and it is clear that none of them filed a declaration of intent, they each received write-in votes. Under such circumstances, we cannot state without

8

speculation or conjecture that the "Marsh" ballots were intended for Gaylen Marsh and not Gilbert, David or Lloyd.

We hold that the District Court did not err in concluding that the surname "Marsh" alone on a write-in ballot was insufficient to determine the intent of the voters under § 13-15-202, MCA.

## Issue 2

Did the District Court err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname "Marsh"?

Marsh argues that election judges are vested with sole responsibility for rejecting invalid or irregular ballots and that a recount board is limited to simply "recounting" those ballots that the election judges have determined to be valid. On this basis, Marsh insists that the Recount Board exceeded its jurisdiction by redetermining which ballots to count and which ballots to void and that the District Court erred in concluding otherwise. Overland contends that Marsh's approach fails to consider other relevant statutes and fails to look at the statutes as a whole.

Statutes do not exist in a vacuum. They must be read in relationship to one another to effectuate the intent of the statutes as a whole. See Swan Corp. v. Mont. Dep't of Revenue (1988), 232 Mont. 210, 214, 755 P.2d 1388, 1390; (citing State v. Meader (1979), 184 Mont. 32, 36-37, 601 P.2d 386, 388-89). In Howell v. State (1994), 263 Mont. 275, 868 P.2d 568, we stated that "it is our duty to interpret individual sections of an act in such

9

a manner as to ensure coordination with the other sections of the act." Howell, 868 P.2d at 574 (citation omitted).

Section 13-15-202, MCA, generally provides that the election judges shall count the votes cast for each candidate. As discussed above, § 13-15-202(3), MCA, allows the election judges to count only those ballots which clearly convey the voters' intent. Implicit in the term "count" is that only those ballots which satisfy the statutory intent requirement may be counted.

Sections 13-16-101 through 13-16-507, MCA, set forth the procedures for the appointment of a recount board and for recounts of various types. Section 13-16-412, MCA, authorizes a recount board to count votes cast for the candidates involved in the recount, while § 13-16-415, MCA, requires a recount board to verify the results:

> After a recount is completed, tally sheets shall be compared and the correctness of all reports of votes cast ascertained. The totals for each candidate or on each issue shall be compiled and checked for accuracy. [Emphasis added.]

When Overland petitioned for a recount, the Recount Board was required by § 13-16-412, MCA, to count the votes cast for the candidates for sheriff. It was further required, under § 13-16-415, MCA, to ascertain the correctness of all reports of votes cast. Reading these statutes together, we conclude that the Recount Board could fulfill its statutory duties only by determining whether or not certain votes could be counted pursuant to the strictures contained in § 13-15-202, MCA.

10

We hold that the District Court did not err in concluding that the Recount Board had jurisdiction to disallow votes cast with only the surname "Marsh."

## Issue 3

Did the election judges' failure to properly identify rejected ballots compromise the validity of the entire election?

Marsh argues that the election judges failed to mark the ballots they rejected as required by § 13-15-203, MCA. He claims that this failure to properly mark the rejected ballots compromised the validity of the entire election process.

Marsh did not name the election judges as party defendants in this action; nor did he raise this issue in his complaint. He also did not present this argument during the hearing and did not move to amend his pleadings to conform to any evidence presented, as authorized by Rule 15(b), M.R.Civ.P. Marsh raised this issue for the first time in his post-hearing memorandum, and the District Court did not address the issue in its findings and conclusions.

We will not address issues which were not properly raised before the district court. Lane v. Smith (1992), 255 Mont. 218, 221, 841 P.2d 1143, 1145. We conclude that Marsh failed to timely raise the issue of the election judges' failure to mark rejected ballots as required by § 13-15-203, MCA, before the District Court and, therefore, we decline to address it.

## Issue 4

Did the District Court abuse its discretion in awarding attorney's fees to Overland?

11

In Montana, litigants generally are not entitled to an award of attorney's fees absent a specific contractual or statutory provision. Howell, 868 P.2d at 574. Section 13-36-205, MCA, authorizes an award of attorney's fees to the prevailing party in a contested election proceeding:

> In any contest, the prevailing party may recover his costs, disbursements, and reasonable attorney's fees. Costs, disbursements, and attorney's fees in all such cases shall be in the discretion of the court.

Because a fee award under § 13-36-205, MCA, is discretionary, we review the District Court's award of attorney's fees to Overland for abuse of discretion. Gandy v. Eschler (1993), 261 Mont. 355, 361, 862 P.2d 1116, 1120.

Marsh asserts that either he or Overland probably would have initiated the election contest proceeding after the recount, regardless of the results of the recount. He further contends that the inevitable legal action would have resulted from the acts of the election judges or Recount Board rather than from any fault of either himself or Overland. Under these circumstances, he argues that the District Court abused its discretion in awarding attorney's fees to Overland rather than leaving each party responsible for the attorney's fees he incurred.

Overland is the prevailing party in an election contest proceeding. Section 13-36-205, MCA, authorizes an award of attorney's fees in such a situation and the District Court acted pursuant to the statute in making the award. The court, in its discretion, could have accepted Marsh's arguments; it did not

12

choose to do so. We conclude that the District Court did not abuse its discretion in awarding attorney's fees to Overland.

Overland points out that he has incurred additional costs and attorney's fees in defending against Marsh's appeal and requests that we award him fees and costs on appeal. Overland's attorney's fees on appeal were incurred during his ongoing defense against Marsh's election contest. Under the facts and circumstances of this case, awarding attorney's fees on appeal furthers the purpose of § 13-36-205, MCA, and is consistent with the discretionary award by the District Court. See Bozeman Daily Chronicle v. City of Bozeman (1993), 260 Mont. 218, 232, 859 P.2d 435, 444. Therefore, we conclude that Overland is entitled to an award of costs and reasonable attorney's fees for this appeal.

Affirmed and remanded for determination of the amount of attorney's fees and costs to be awarded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Gaylen Marsh waged a write-in campaign for sheriff of Sheridan County and won. Mike Overland lost. Election judges in Sheridan County who were responsible for determining the voters' intent, and who were in the best position to do so, agreed that Gaylen Marsh won. Now this Court, far removed from the politics of Sheridan County and totally unfamiliar with the persons involved, has set aside Gaylen Marsh's election, disenfranchised hundreds of Sheridan County voters who chose him as their sheriff, struck a blow against democracy, and once again has elevated form over substance.

Any analysis of the issues raised by this appeal should have started out with the following consideration:

> Because an election contest involves the right of qualified voters to have their ballots counted for the candidate of their choice, the right of franchise is at stake. The right to vote is a fundamental political right. It is essential to representative government. *Wesberry v. Sanders*, 376 U.S. 1, 17-18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481, 492 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make laws under which, as good citizens, we must live."). Any alleged infringement of the right to vote must be carefully and meticulously scrutinized. *Reynolds v. Sims*, 377 U.S. 533, 561-562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527 (1964).

*Devine v. Wonderlich* (Iowa 1978), 268 N.W.2d 620, 623.

The Montana statute which controls the outcome in this case recognizes the danger of infringing on the precious right to vote when it provides in part that: "If part of a ballot is sufficiently

14

plain to determine the elector's intention, the election judges shall count that part." Section 13-15-202(3), MCA.

In an early application and analysis of nearly identical statutory language, this Court held that that language requires liberal application toward the end of counting votes, rather than rejecting them. In *Peterson v. Billings* (1939), 109 Mont. 390, 96 P.2d 922, we held that:

> "It is a general rule that election laws must be liberally construed. This court, in *Stackpole v. Hallahan*, 16 Mont. 40, 40 Pac. 80 [28 L. R. A. 502], on page 57, 16 Mont., and page 85, 40 Pac. announces that 'in the construction of election laws the whole tendency of American authority is towards liberality, to the end of sustaining the honest choice of the electors.' The reason for this rule is that the paramount and ultimate object of all election laws under our system of government is to obtain an honest and fair expression from the voters upon all questions submitted to them." (*Dickerman v. Gelsthorpe*, 19 Mont. 249, 47 Pac. 999, 1001.)

> "But if, from the marking of the ballot and substantial compliance with the law, the intent and choice of the voter clearly appear, then his ballot should be counted, unless the statute expressly or by clear inference forbids it; otherwise the true spirit of the election law might be violated by subordinating the essence to a mere element of detail, and substance might be sacrificed to form. The elective franchise is not conferred upon the citizen by the legislature, or by virtue of legislative enactments. The right to vote is a constitutional right, and is one of the bulwarks of our form of government and system of civil liberty." (Id., 20 C. J. 154, 18 Am. Jur. 302, and many cases therein cited.) This is particularly true where there is a statutory provision similar to our section 777. [Now § 13-15-202(3), MCA.]

*Peterson*, 96 P.2d at 924-25.

We have never varied in our decisions from the guidance set forth in *Peterson*. The quoted language has been cited with approval

15

as recently as 1987 in *Rennie v. Nistler* (1987), 226 Mont. 412, 414-15, 735 P.2d 1124, 1126.

With the rule in mind that ballots must be counted if the voter's intent can be determined, our statutes establish qualifications for election judges which should assist them in making those determinations. Election judges must be registered voters of the county and the precinct in which they serve, but may not be a candidate or related to a candidate. Section 13-4-107, MCA. The Secretary of State prepares instructional materials for election judges and holds workshops every two years to instruct administrators and their staffs on the use of the materials. Before each election, all election judges who do not possess a current certificate of instruction must be instructed by the election administrator. Only after completing a training session, are judges certified. Section 13-4-203, MCA.

The requirement that election judges be residents of the precinct in which they serve furthers the objective that they be familiar with local candidates and their campaigns, the names and identities of persons in their community, and the political issues with which the elections they judge are concerned. All of these sources of information make them better able to perform the duty with which they are charged by § 13-15-202(3), MCA, which is to determine the "elector's intention" when a question is raised.

With this statutory and decisional background, it is helpful to examine the relevant facts in this case. Gaylen Marsh resided in Plentywood, in Sheridan County. Prior to the 1994 election, he

16

had worked in the Sheridan County Sheriff's Office as a deputy, and in the City of Westby as a police officer. He was an unsuccessful candidate for sheriff of Sheridan County in 1986 and 1990. In 1994, he was an unsuccessful candidate for the democratic nomination for sheriff. Following his unsuccessful primary campaign, he made a decision to run as a write-in candidate.

So that write-in votes for him could be counted, Marsh filed a declaration of intent to run as a write-in candidate. He was the only person who did so. He also nominated a treasurer for his campaign. He advertised in newspapers and on the radio; he displayed sign boards and posters; he mailed campaign literature to the voters of Sheridan County; and he traveled throughout the County to meet and campaign among its voters, occasionally going door-to-door. He had two types of posters, but the larger and more frequently used posters simply said "Marsh for Sheriff."

There are other Marshes in Sheridan County. All of them are related to Gaylen. However, none of them campaigned for the office of sheriff in the 1994 election. In fact none of them have ever sought political office, been politically active, or been involved in law enforcement in any capacity.

The election judges in Sheridan County were presumably familiar, in a general sense, with this background when they evaluated ballots in the 1994 sheriff's election.

It was not necessary for this Court to break new ground in order to affirm the will of the voters in Sheridan County. Other state courts have considered challenges to ballots for write-in

17

candidates under nearly identical circumstances. In *Devine*, the plaintiff was a write-in candidate for county board supervisor who lost the election by 50 votes after the district court rejected ballots which included only his surname or his surname and the first initial of his given name. On appeal to the Iowa Supreme Court, that court first noted that its rule by which the validity of ballots are judged, is similar to our statutory rule. Ballots in that state are valid when they include sufficient information to indicate the person for whom the voter intended to cast his or her ballot. That court held that the following circumstances are to be considered in arriving at that determination:

> As these cases hold, the issue is to be decided in light of all facts of a general public nature surrounding the election which the voter may be presumed to know and in view of which he may be presumed to have exercised his franchise. Among the circumstances bearing on the determination of voter intent are whether the write-in candidacy was well publicized and whether other candidates and other residents of the locality involved had the same or similar surname.
>
> In this case, Devine's candidacy was well publicized and advertised. Because of this and because of his prior candidacy for the same office, his name was familiar to many voters in this rural, lightly-populated county. Ten other residents of the county bore the same surname, but all were relatives of Devine and none was a candidate for this or any other office. . . .
>
> . . . In view of Devine's active candidacy, the publicity and advertising which accompanied it, and the unlikelihood of his being confused with the few other persons having the same surname, none of whom were shown to be politically active, the use of his surname alone was sufficient to indicate a vote for him.

*Devine*, 268 N.W.2d at 627.

18

All of the factors considered significant by the Iowa Supreme Court are present in this case. Marsh's candidacy was an active one attended by substantial publicity. Although there were other residents in Sheridan County with the same surname, all were relatives, none was a candidate, and none was politically active. Under these circumstances, it is difficult to conclude at a distance of several hundred miles that the election judges who were intimately familiar with the local election were not in a better position to determine the intention of those voters who wrote in the name "Marsh" as their choice for Sheridan County Sheriff.

The Iowa Court also listed decisions from California, Illinois, Kentucky, Michigan, Missouri, New Jersey, New York, and Rhode Island which support the same conclusion. *Devine*, 268 N.W.2d at 627.

Even more similar and more recent is *Meyer v. Lamm* (Colo. 1993), 846 P.2d 862, which is so casually rejected by the majority. In *Meyer*, as in this case, the Boulder County Clerk and Recorder instructed the recount judges, based on advice from the Secretary of State, that write-in ballots which contained only Lamm's surname should not be counted. The district court held that those ballots should be counted, and the Supreme Court of Colorado affirmed. Although statutory law in Colorado required that a write-in candidate's full name be used on the ballot, that court held that strict compliance with that requirement would unduly infringe upon the suffrage rights of Colorado voters. *Meyer*, 846 P.2d at 875.

19

It also held that to give the fullest effect to votes cast, it was proper to consider extrinsic evidence to determine the voters' intent. After doing so, it arrived at the following conclusion for the following reasons:

> Under the test of substantial compliance, and considering the circumstances surrounding the election of District 13, we agree that write-in votes for "Lamm," "Ms. Lamm," "Miss Lamm," or "Mrs. Lamm" should be counted for Peggy Lamm. The evidence adduced at the hearing indicated that Peggy Lamm was the only person in District 13 that had campaigned as a write-in candidate for representative. She was the only person who had filed the requisite affidavit of intent to run and was thus the only person other than Drew Clark eligible to be elected to the office. There was evidence that Lamm's campaign was extensive and vigorous and that she had obtained the editorial endorsement of a number of newspapers in the metropolitan area. Given these facts, as well as the absence of any official instructions to voters that a valid write-in vote must contain more than a last name, we find that the intention of these voters to vote for Peggy Lamm can be ascertained with the requisite certainty.
>
> Our holding is consistent with the case law in other jurisdictions.

*Meyer*, 846 P.2d at 877.

Other than editorial endorsements, all of the factors considered significant by the Colorado Supreme Court are present in this case. Gaylen Marsh was the only person who had campaigned as a write-in candidate in Sheridan County. He was the only person who had filed a declaration of intent to run as a write-in candidate for sheriff. His campaign was extensive and vigorous. And last but not least significant, there was a total absence of any instructions, either verbal or written, to voters in Sheridan

20

County which indicated that a write-in vote for Marsh must include his first name or initial to be counted.

In the face of numerous precedent to the contrary from other jurisdictions under eerily similar circumstances, the majority has forged ahead with its commitment to second-guess Sheridan County's election judges without so much as citing one authority in support of its conclusion. None of the Montana precedent cited in the majority opinion addresses facts even remotely similar to the facts in this case, and of those Montana precedents, only the *Peterson* decision cites to the appropriate and controlling statute. To the extent that the *Peterson* case established a rule which can be applied to this case, it requires reversal of the District Court.

The majority concludes that because twenty-eight other registered voters in Sheridan County have the surname "Marsh," it is speculative who voters in that county intended to elect when they placed that name on a ballot for county sheriff. However, only one of those twenty-eight people named Marsh was a candidate for county sheriff.

The majority finds it significant that several voters cast a ballot for a Marsh with a different first name. Obviously, based on the facts in this case, those voters were mistaken about their candidate's first name. However, the simple solution to those mistakes is to disregard those ballots. Marsh does not contend on appeal that they should be considered.

21

Finally, the majority concludes that "it cannot be determined without speculation that the 'Marsh' votes were intended for Gaylen . . . ." However, common sense suggests otherwise, and so did the election judges who were in the best position to know.

Because I would reverse the District Court's judgment that the surname "Marsh" was insufficient to indicate the intent of voters pursuant to the requirements of § 13-15-202, MCA, it would not normally be necessary to discuss the second issue addressed in the majority opinion. However, the majority's rationale for deciding that issue is so far off-base, that it requires some comment.

The majority has resolved Issue 2 by concluding that the recount board has authority to evaluate the adequacy of ballots, rather than simply count them. There is, of course, no statutory basis for this conclusion, and therefore, the majority rationalizes that authority which is not provided by any single statute can somehow be created out of whole cloth by combining several statutes which individually provide no authority.

The fallacy of the majority's conclusion is best illustrated by simply setting forth the statute upon which it principally relies. Section 13-16-412, MCA, provides as follows:

> The county recount board in recounting the ballots shall count, at the same time, the votes cast in the precincts in which a recount is ordered for the several candidates in whose behalf a recount is ordered in the following manner:
> (1) The election administrator shall produce, unopened, each sealed package or envelope received from the election judges of the precinct or precincts in which a recount is ordered, containing all ballots voted in the precinct or precincts.

22

(2) A member of the county recount board shall open each sealed package or envelope and remove the ballots.

(3) One of the members of the board shall read each ballot aloud. As the ballots are read, two clerks shall write the votes cast for each individual in each precinct, at full length, on previously prepared tally sheets. The tally sheets shall show the names of the respective candidates, the office or offices for which a recount is made, and the number of each election precinct.

Section 13-16-415, MCA, provides that:

After a recount is completed, tally sheets shall be compared and the correctness of all reports of votes cast ascertained. The totals for each candidate or on each issue shall be compiled and checked for accuracy.

Section 13-16-412, MCA, sets forth only a procedure for counting ballots. It bestows no authority to evaluate the adequacy of ballots or reject any ballot included in the sealed envelope produced by the election administrator.

Section 13-16-415, MCA, authorizes the recount board to evaluate the correctness of "all reports of votes" and verify the "totals" for each candidate to determine that those "totals" are accurate. It makes no mention of any authority to analyze the validity of any ballot or to reject any ballot.

Furthermore, the recount board is simply composed of three members of the local governing body, in this case, the county commissioners. Section 13-16-101, MCA. Unlike election judges, members of the recount board are not required to live in any particular part of the county and there are no educational requirements for recount board members. These qualifications are unnecessary for a group of people whose only obligation is to count ballots.

23

Only election judges are given statutory authority to accept or reject ballots. Section 13-15-202(3), MCA, provides in part that:

> A ballot or part of a ballot is void and may not be counted if the elector's choice cannot be determined. If part of a ballot is sufficiently plain to determine the elector's intention, the election judges shall count that part.

Section 13-15-203, MCA, instructs election judges on the procedure to follow for rejected ballots. It requires:

> A ballot rejected for illegality shall be marked by the election judges by writing across the face, "rejected on the ground of . . .", filling the blank with a brief statement of the reasons for the rejection. The statement shall be dated and signed by a majority of the judges.

No similar procedure for documenting their reasons for rejection of a ballot is provided in the chapter pertaining to election recounts.

It is obvious from this clear statutory scheme that only election judges, with their superior familiarity and qualifications, are authorized by statute to reject and accept ballots. The majority's conclusion to the contrary is a transparent attempt to affirm an unauthorized result without any support in the law.

By their decision in this case, the majority thumb their collective noses at the voters in Sheridan County, strike a blow against democracy, and demonstrate once again that technicalities are more important than substance in the rarified atmosphere of the Supreme Court. For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court and

24

return to Gaylen Marsh the election that he won at the ballot box but lost in court.

_____
                      Justice